Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK B.,<br><br>                **Plaintiff,**<br><br>       v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                **Defendant.** | Civil Action No.: 21-12527 (EP)<br><br>OPINION |

**PADIN, DISTRICT JUDGE**

Plaintiff Mark B. appeals the decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Child Disability Benefits ("CDB") under Title II of the Social Security Act (the "Act"). *See* D.E. 1. For the reasons discussed below, the Court **VACATES** and **REMANDS** the decision of the Commissioner.

I.      BACKGROUND

Plaintiff applied for DIB and CDB on March 9, 2018 and April 3, 2018, respectively. D.E. 7, Administrative Record ("R.") 298, 302. Plaintiff alleged that he was disabled beginning on September 9, 1987, the day before he turned 22, and through December 31, 1988, the date his insured status expired. He claimed that he was disabled due to schizophrenia, bipolar disorder, and depression. R. at 18, 49, 323. Plaintiff's applications were denied initially on June 14, 2018, and upon reconsideration on October 22, 2018. R. at 114-128. Plaintiff thereafter filed a written request for hearing on November 19, 2018. On November 22, 2019, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff testified. R. at 27-47.

On January 29, 2020, the ALJ issued a written decision denying Plaintiff's applications for

DIB and CDB.  R. 15-19.  The ALJ ruled that Plaintiff was not entitled to CDB or DIB because he did not demonstrate a medically determinable impairment at any time between September 9, 1987, the day before he turned 22, and December 31, 1988, the date his insured status expired.  R. at 18-19.  In reaching this conclusion, the ALJ expressly found, *inter alia*, that the record did "not contain any psychiatric medical evidence for any period prior to [December 31, 1988]" and that "[t]here were no medical opinions contained within the record relevant to the period at issue."  R. at 18-19.  In so doing, the ALJ discounted, as "completely unpersuasive," the medical opinions of two of Plaintiff's treating physicians, Drs. John F. Fisher and Steven Sarner, who each opined that Plaintiff's "symptoms/limitations were present as early as 1987."  R. at 1872, 1876.

On April 23, 2021, the Appeals Council denied Plaintiff's request for review.  R. at 1-3.  Plaintiff then filed the instant appeal, which the Court has subject-matter jurisdiction to decide.  42 U.S.C. §§ 405(g) & 1383(c)(3).  The Commissioner opposes.  D.E. 11.

## II.    LEGAL STANDARDS

### A.    Standard Governing Commissioner's Disability Determinations

For a claimant to receive Title II DIB and/or CDB, he must show that he is "disabled" within the meaning of the Act.  42 U.S.C. §§ 416(i), 423(a).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A)(3)(a), 1382c(a)(3)(A).  Under this definition, a claimant qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such

work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B). Again, the issue before the ALJ in this case was whether Plaintiff was "disabled" within the meaning of the Act at any time between September 9, 1987 and December 31, 1988.

In evaluating whether a claimant is disabled as defined in the Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a).

In the first four steps of this analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. *See Wallace v. Secretary of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). In the fifth and final step, the Commissioner bears the burden of proving that work is available for the plaintiff. *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); *Olsen v. Schweiker*, 703 F.2d 751, 753 (3d Cir. 1983). Stated somewhat differently, the claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f).

### i. The ALJ's Five-Step Analysis in Plaintiff's Case

In the matter presently before the Court, the ALJ found that Plaintiff sufficiently demonstrated, at step one, that he had not engaged in any substantial gainful activity "during the period from his alleged onset date of September 9, 1987 through his date last insured of December 31, 1988." R. 17. The ALJ further found, at step two, that Plaintiff failed to "substantiate the existence of a medically determinable impairment" as of December 31, 1988; the ALJ denied Plaintiff's applications for DIB and CDB for this reason. The ALJ, in other words, found Plaintiff not disabled at step two of the five-step sequential process. R. 18-19. The ALJ ended his analysis at step two and did not proceed to steps three, four, and five.

Plaintiff, on appeal, avers that the ALJ's analysis is flawed because it, *inter alia*, improperly discounted the medical opinions of Drs. Fisher and Sarner.

### B. Standard of Judicial Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willbanks v. Secretary of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. *Id.* (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978).

Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, *Fargnoli*, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182. However, apart

from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. *Sykes*, 228 F.3d at 262; *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Curtin v. Harris*, 508 F. Supp. 791, 793 (D.N.J. 1981).

### III. DISCUSSION

As noted, the ALJ found Plaintiff failed to meet his step two burden to "substantiate the existence of a medically determinable impairment" as of December 31, 1988, and denied his CDB and DIB applications for this reason. The pertinent portions of the ALJ's January 20, 2020 written decision follow:

> In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process.
>
> The claimant alleges that he is limited in his ability to work due to schizophrenia, bipolar disorder and depression. During the hearing, the claimant testified that he suffers from schizophrenic ad bipolar disorders as early as the 6th grade. He stated that he suffered a "complete total breakdown" and suicidal at that age. He described undergoing therapy with a psychologist. The claimant also added that he did poorly in school and took part in Special Education but graduated high school. The claimant described auditory and visual hallucinations as well as violent behavior. The claimant's representative attempted to obtain school records but was unable [sic] to given that they date back to the late 1980's.
>
> . . . . [T]he relevant period in question is from the alleged onset of September 9, 1987 to the Date Last Insured [("DLI")] of December 31, 1988. After reviewing the entire record, the medical evidence does not contain any psychiatric medical evidence for any period prior to the [DLI]. Recent emergency room records indicate that the claimant's first psychiatric treatment began in 1993, with two psychiatric admissions in 2001 and 2010. On this information, the State Agency DDS medical consultants reviewed the claim in June and October 2018 and found insufficient evidence to establish disability.

6

> The undersigned agrees with the opinions of the DDS that the medical evidence does not establish any medically determinable impairments prior to the [DLI] or before attaining age 22. After review of the file, there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment for the period in question. For these reasons, the undersigned finds the opinions of the DDS consultants to be persuasive. There are no medical opinions contained within the record relevant to the period at issue. Any remaining opinions contained in the record, such as those from Drs. Fisher, Sarner and Ellis, relate only to post-[DLI] impairments and therefore are completely unpersuasive because they do not relate to the period in question. . . .
>
> While there is a sworn layperson's statement from the claimant's former teacher and [brother], it is insufficient to establish any medical determinable impairment. As stated above, the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings. As such, there is nothing in the record to establish the existence of a medically determinable impairment prior to the [DLI].

R. 18-19 (internal citations omitted).

Based on the foregoing reasons, the ALJ denied Plaintiff's DIB and CDB claims at step two of the five-step sequential evaluation process. This Court finds that in so doing, the ALJ erred. At step two, the ALJ has to "consider the medical severity of a claimant's impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). "The severity test at step two is a *de minimis* screening device to dispose of groundless claims." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citation omitted). Thus, "the burden placed on an applicant at step two is not an exacting one." *Id.* Indeed, although "the regulatory language speaks in terms of 'severity,'[1] the Commissioner

---

[1] In order to have a severe impairment, the impairment or combination of impairments must significantly limit a person's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities are: (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting. 20 C.F.R. § 404.1522. In addition, the severe impairment "must have lasted or must be expected to last for a continuous period of at least twelve months." 20 C.F.R. § 404.1509.

has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *Id.* (citing SSR 85-28) (other citations omitted). "Any doubt as to whether this showing has been made is to be resolved in favor of the applicant." *Id.* (citation omitted). Indeed, "step two is to be rarely utilized as basis for the denial of benefits . . . [and] its invocation is certain to raise a judicial eyebrow." *Id.* at 360-61.

On appeal, Plaintiff argues that the ALJ's analysis, which, again, terminated at step two of the five-step sequential process, is flawed because it improperly discounted the medical opinions of two of Plaintiff's treating physicians, Dr. John F. Fisher and Dr. Steven Sarner. D.E. 10 at 3-6, PageID: 2145-2148. The Court agrees, and will vacate and remand for this reason.[2]

As to Dr. Fisher, the record evidence before the ALJ showed that Dr. Fisher had treated Plaintiff intermittently since January 28, 1985, *see* R. at 1782-1785, that Plaintiff is a diagnosed schizophrenic, *see id.*, and that, in Dr. Fisher's medical opinion, formed based on his review of Plaintiff's extensive collection of medical records dating from 1985 on, Plaintiff's psychotic symptoms and limitations were present prior to Plaintiff turning 22 years old. R. at 1871-1872. Dr. Sarner, who has treated Plaintiff since 2002, opined, based on his review of the same substantial medical records, that Plaintiff presently suffers from bipolar illness, and that those symptoms have been present since Plaintiff's adolescent years. R. at 1875-1876.

The ALJ's decision to discount both opinions as "completely unpersuasive because they [relate only to post-DLI impairments]" is contrary to the foregoing considerations. The ALJ's finding that "[t]here are no medical opinions contained within the record relevant to the period at issue" likewise ignores the import of these two medical opinions. More importantly, the ALJ's

---

[2] The Court therefore need not consider Plaintiff's additional claim that "[t]he ALJ did not properly evaluate the lay witness evidence in this case." D.E. 10 at 7, PageID: 2149.

8

decision fails to recognize a claimant's burden at step two is "not an exacting one." *McCrea*, 370 F.3d at 360; *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir. 2003); *accord Sherrard v. Saul*, No. 3:18-CV-01590, 2019 WL 4254134, at *7 (M.D. Pa. Aug. 12, 2019) ("in finding that [claimant] did not suffer from a severe impairment . . . the ALJ cited to a lack of contemporaneous medical records supporting [the treating physician's] conclusions.  This, however, effectively imposed an exacting burden of proof at step two that went beyond the *de minimis* screening threshold"), *report and recommendation adopted*, No. 3:18-CV-1590, 2019 WL 4256282 (M.D. Pa. Sept. 6, 2019); *D.G. v. Commissioner of Social Security*, Civ. Action No. 20-2774(SRC), 2021 WL 3047065, at *2 (D.N.J. July 20, 2021) ("This Court finds that the ALJ erred at step two in not finding that Plaintiff's headaches qualified as a severe impairment.  Because any doubt must be resolved in favor of the applicant, and because the ALJ acknowledged the subjective and objective evidence of the headaches at step four, the ALJ's step two decision is in error."); *Slotcavage v. Berryhill*, No. 3:18-CV-1214, 2019 WL 2521634, at *9 (M.D. Pa. June 3, 2019) ("while [the ALJ's] determination concerning the degree to which [claimant] is limited by [his herniated disc] impairment may have been appropriate at the latter stages of [the five-step] sequential analysis, it was not proper at [step two]"), *report and recommendation adopted*, No. 3:18-CV-1214, 2019 WL 2521223 (M.D. Pa. June 18, 2019).

In short, the record evidence before the ALJ included medical opinions from two separate treating physicians who each independently opined that the symptoms and limitations for which Plaintiff sought CDB and DIB were present as early as 1987.  While the Court appreciates the ALJ's concern that there was an apparent lack of "psychiatric medical evidence" in the record dated prior to December 31, 1988, the ALJ's decision to end his analysis at step two was nonetheless inappropriate in light of the medical opinion evidence presented by Drs. Fisher and

Sarner. *See Sherrard*, 2019 WL 4254134, at *7 (reversing and remanding ALJ's step two denial of benefits where record contained a medical opinion from claimant's treating physician affirming that the symptoms and limitations described in that doctor's report "retroactively applied to [claimant] before the date last insured"); *Slotcavage*, 2019 WL 2521634, at *9 (reversing and remanding ALJ's step two denial of benefits where ALJ discounted medical opinion of claimant's treating physician based on purported lack of "independent documentary evidence").

IV.     CONCLUSION

       For the foregoing reasons, the Court **VACATES** and **REMANDS** the decision of the Commissioner. An appropriate Order will follow.

Dated: August 15, 2022                                             **Evelyn Padin, U.S.D.J.**